**W. E. HEDGER TRANSP. CORPORATION
v. THE GREENE et al.**

**THE C. N. McNULTY.**

**No. 17747.**

United States District Court
E. D. New York.

April 13, 1950.

Platow & Lyon, New York City, proctors for libelant (John A. Lyon, New York City, advocate).

Purdy, Lamb & Catoggio, New York City, proctors for claimant (Vincent A. Catoggio, New York City, advocate).

1. This is called on a port facilities map in evidence structure No. 18.

2. This is designated structure No. 86 on the same map.

3. The Calvin Coolidge is 422.8 feet long; her beam is 57 feet.

4. The length of Weeks No. 11 is 112.8 feet, her beam is 33.7 feet; McNulty's length is 117.8 feet, her beam is 30 feet.

KENNEDY, District Judge.

This is a libel *in rem* in a cause of collision.

In the upper reach of Gowanus Creek there is a bulkhead, adjacent to what is apparently a structure occupied by Seaboard Storage Corp.[1] Opposite this bulkhead (across the creek) is a pier, apparently owned by Prospect Terminal Corporation.[2] On December 10, 1945 at 10:30 o'clock in the morning three ships were moored alongside the Seaboard bulkhead with their bows upstream. Immediately adjacent to the pier, port side to, was the steamer Calvin Coolidge.[3] Along the starboard side of Coolidge was the digger Weeks No. 11, and on Weeks' starboard (off-shore) side was libelant's barge McNulty.[4] The total width of the three ships thus moored was 120.7 feet; the channel at this point is 200 feet wide, and McNulty was using up not more than 50 feet of the channel.

Across the creek, moored at the Prospect pier, was a Brazilian ship (Sideburgica Quartro). This ship was bow in at the pier, and at the time in question she was turning over her propellers, setting up a considerable amount of quick water.

At this juncture the tanker Greene was proceeding up the creek at a point several hundred feet to the southward of the place where McNulty was moored.[5] Ahead of Greene was the tug Hesperus, towing on her port side the barge Socony No. 104.[6] Greene was gaining on Hesperus, because the latter had stopped her engines. As Greene approached Hesperus, the former blew two blasts and Hesperus answered with two, whereupon Greene directed her course slightly to her own port hand and passed Hesperus, with the intention of

5. Greene is a twin screw tanker. Her length is 146.3 feet and her beam is 20.2 feet; her depth is 10.9 feet. She develops 500 horsepower.

6. The length of Hesperus is 53.2 feet; her beam is 17.6 feet, and her depth 7 feet. She develops 250 horsepower. The length of Socony No. 104 is 149.6 feet; her beam is 27.1 feet, and her depth is 11.2 feet.

100

proceeding up the creek. But as Greene, proceeding under a slow starboard bell, began to pass Hesperus the pilot of Greene saw that Quartro was sending out quick water. Greene blew an alarm directed at Quartro and backed both engines. Her pilot at this point had placed himself in a position where he could not maneuver very well to his own starboard hand, because of danger of collision with Hesperus. His backing maneuver was not sufficient to check his way and remove his ship from the influence of the quick water, and her bow portion was driven into the starboard stern portion of McNulty.

Libelant relies very largely upon the "presumption" arising from a collision between a moving and a moored vessel. On behalf of Greene, it is urged that the prime cause of the collision was the fault of Quartro (not a party to the suit) in working her engines while moored at a pier in confined waters. Greene also ascribes blame to McNulty because she was "blocking the channel".

But the facts make it quite clear that Hesperus and her tow observed Quartro's quick water, and hove to in the channel rather than take the risk of proceeding. What Hesperus saw, Greene should have seen. But Greene elected to pass Hesperus, leaving the latter on her starboard hand, and to attempt to maneuver her way through the quick water, which she by this time in fact saw: in other words, Greene accepted a risk which Hesperus refused to take. As for the charge against McNulty that she blocked the channel, here again the situation was plain to the pilot of Greene: when he made the election to pass Hesperus there was at least 150 feet of clear water between McNulty's side and the opposite edge of the channel which, considering the tanker's beam, was adequate maneuvering room. The concurring causes of the disaster were the quick water and the election on the part of the master of the tanker to proceed through it. The fact that a portion of McNulty's length was in the channel bore no causal relation to the collision, since there was plenty of room left.

The danger was clear as Greene began her passing maneuver, the precautions necessary to prevent collision could easily have been taken, and the risk of serious damage was grave. These facts spell out fault on the part of Greene, regardless of Quartro's conduct. Failure to join the latter as a party does not whittle down libelant's rights.

Submit decree, with costs, in the usual form.